UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BARBARA SIMONSON,

        Plaintiff,

        v.                              Case No. 23-C-526

THOMAS M. OLEJNICZAK,
STEVEN J. KRUEGER, and,
CONWAY, OLEJNICZAK & JERRY, S.C.,

        Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Barbara Simonson filed this breach of contract action against Defendants Thomas M. Olejniczak, Steven J. Krueger, and Conway, Olejniczak & Jerry, S.C. (COJ), whom she retained to assist her with a probate matter in Wisconsin. Ms. Simonson alleges that Defendants breached their legal services agreement by failing to appear on her behalf at a November 9, 2015 hearing and failing to file certain documents to close the Estate. The court has jurisdiction under 28 U.S.C. § 1332. Before the court is Defendants' motion for summary judgment. Based upon the facts and for the following reasons, Defendants' motion will be granted, and the case will be dismissed.

### BACKGROUND

Ms. Simonson's father, John Hohler, died on May 29, 2013. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 25. Prior to his death, Mr. Hohler and his wife (who predeceased him) created the "John J. and Jane Hohler Trust." *Id.* ¶ 2. Ms. Simonson was designated as the trustee and as the personal representative of her late father's Estate. *Id.* ¶¶ 3–4. The terms of the

Trust and Estate provided that 10% of all assets would be distributed to a Grandchildren Sub-Trust and the remainder would be distributed equally to Children Sub-Trusts. *Id.* ¶ 5. Mr. Hohler was survived by two children (Ms. Simonson and her sister, Mary Vaira) and one grandchild (Joseph Simonson), which meant the beneficiaries of the Trust were the Joseph Simonson Sub-Trust (10%), the Barbara Simonson Sub-Trust (45%); and the Mary Vaira Sub-Trust (45%). *Id.* ¶ 6.

Ms. Simonson hired Attorney Jennifer D'Amato to open the Estate, which she did on July 16, 2013 in Winnebago County Case No. 13-PR-206. *Id.* ¶ 7. Attorney D'Amato was replaced by Attorney Roy Fine on January 15, 2014. *Id.* ¶ 8. On June 16, 2014, Ms. Vaira filed a petition in probate court to remove Ms. Simonson as trustee and personal representative. *Id.* ¶ 10. At that point, Ms. Simonson retained the law firm of Conway, Olejniczak & Jerry, S.C. to replace Attorney Fine. *Id.* ¶ 11. Ms. Simonson signed a written Legal Services Agreement with COJ on June 18, 2014, stating that COJ would "represent you in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira." *Id.* ¶¶ 12–13; Dkt. No. 27-2 at 1. As part of their agreement, Ms. Simonson agreed to "pay [COJ's] monthly statements on time" and that "[a]ccounts not paid within thirty (30) days will be charged interest at the rate of five percent (5%) per annum on the unpaid balance." DPFOF ¶ 14; Dkt. No. 27-2 at 2. The agreement also indicated that COJ reserved "the right to withdraw from representation of [Ms. Simonson] at any time after reasonable notice to [her], allowing of course, time for employment of other counsel." DPFOF ¶ 15; Dkt. No. 27-2 at 3. The agreement provided that "[u]nder the rules of professional conduct by which we are governed, we may be required to withdraw from our representation of [Ms. Simonson] in the event of, for example: nonpayment of our fees and expenses." Dkt. No. 27-2 at 3.

Attorneys Olejniczak and Krueger from COJ worked on Ms. Simonson's matter. DPFOF ¶ 16. According to Ms. Simonson, when she learned that Attorney Fine had not closed the Estate,

she told Attorney Olejniczak that closing the Estate was one of the first things that required attention and Attorney Krueger told her that he filed the necessary papers to close it in the summer of 2014. *Id.* ¶¶ 18–20. On October 14, 2014, the probate court issued an Order that allowed Ms. Simonson to remain the trustee and personal representative. *Id.* ¶ 22. Over the next eight months, defendants assisted Ms. Simonson with administering the Trust. *Id.* ¶ 23. On June 5, 2015, the probate court issued an Order setting final deadlines to distribute Trust assets. *Id.* ¶ 31. In that Order, the probate court definitively denied Ms. Vaira's petition to remove her sister as trustee and personal representative. *Id.* ¶ 34. Attorney Krueger emailed the June 5, 2015 Order to Ms. Simonson on June 11, 2015. *Id.* ¶ 36. Ms. Simonson testified that she was "very pleased at that point" with the "great success as of the June 5th Order." *Id.* ¶ 35; Simonson Dep. 170:23–171:8, Dkt. No. 26-3.

On July 20, 2015, Ms. Simonson sent an email to Attorney Krueger stating that "[t]he Trust cannot pay to have everything reviewed by you and I am left to administer and execute the Order and the Trust." DPFOF ¶ 39; Dkt. No. 27-22 at 2. The next day, Attorney Krueger asked for "clarification of what you expect our role to be from this point forward" and offered to "'take a back seat' and assist only when and where requested." DPFOF ¶ 40; Dkt. No. 27-6 at 3. In response, Ms. Simonson said, "Yes, that makes sense . . . . My primary goal in retaining you was to get the properties distributed and that is a priority for the Trust." DPFOF ¶ 41; Dkt. No. 27-6 at 3. Attorney Olejniczak wrote in reply, "The properties have been transferred and therefore we believe our representation is concluded." DPFOF ¶ 42, Dkt. No. 27-6 at 2.

In an email dated July 27, 2015, Ms. Simonson wrote to Attorney Krueger, "My understanding is that you were to be available on an 'as needed basis' and I was not informed that you were speaking to Wyon. I would like to know what was discussed." DPFOF ¶ 43; Dkt. No.

3

27-7 at 1. According to the Probate Case Summary, Wyon F. Wiegratz was the attorney for Mary Vaira. Dkt. No. 26-1 at 2. Attorney Krueger explained, "Per Tom's July 21 email, our representation is concluded. If there are additional issues in which you'd like our assistance, please let me know. Wyon contacted me to advise that both he and your sister were receiving communications directly from you and . . . I advised him that he was free to communicate with you directly as we were no longer involved in the day-to-day dealings related to the implementation of the Order." DPFOF ¶ 44; Dkt. No. 27-7 at 1.

As of June 30, 2015, plaintiff owed $91,047.51 in unpaid legal fees to COJ. DPFOF ¶ 38. In his July 21, 2015 email, Attorney Krueger told Ms. Simonson that "we'd appreciate payment of our outstanding legal fees as soon as possible." *Id.* ¶ 46; Dkt. No. 27-6 at 3. Ms. Simonson made two partial payments on July 30, 2015, totaling $12,000. DPFOF ¶ 48. After applying these payments, the amount owed as of July 31, 2015, was $80,216.63. *Id.* ¶ 49. Ms. Simonson made no additional payments. *Id.* ¶ 50. She told Attorney Olejniczak that she would "provide [him] with a very detailed review" of the disputed charges, pursuant to his request. DPFOF ¶ 51; Dkt. No. 27-6 at 1. Ms. Simonson never provided Attorney Olejniczak with her review, claiming to be "extremely busy" and "under a lot of pressure," and because "it was a very stressful time . . . it was not a priority at that point." DPFOF ¶ 52; Simonson Dep. 112:21–113:12, 132:2–133:14. In an effort to get paid, Attorney Olejniczak made several offers to compromise COJ's bills, discounting up to $22,500, which Ms. Simonson never accepted. DPFOF ¶¶ 53–57.

On August 14, 2015, the probate court issued a Notice to Close Estate, stating that the August 3, 2015, deadline to close the Estate had passed, notifying that the Estate was delinquent, and advising that the court may grant an extension of time to close the Estate upon submission of a proper request. *Id.* ¶¶ 58–59; Dkt. No. 26-6. On August 24, 2015, Ms. Simonson sent an email

to Attorney Olejniczak stating, "It has come to my attention that . . . the estate is now delinquent. Please address this issue immediately . . . I do not understand why this issue is outstanding." DPFOF ¶ 60; Dkt. No. 27-10 at 3. Attorney Olejniczak responded, "We never opened the Estate, that was done by one of your prior firms . . . . As stated previously, you dismissed us as Counsel some time ago and we are requesting the Court to allow that to happen, since you have refused to pay our bill, which I agreed to substantially compromise. You will have to deal with the estate closing." DPFOF ¶ 61; Dkt. No. 27-10 at 2. Ms. Simonson replied, "I never dismissed you as counsel . . . I do not consent to your withdrawl [sic] and the last email from Steve clarified that you would be available to handle issues as needed." DPFOF ¶ 62; Dkt. No. 27-10 at 1. Attorney Olejniczak responded that they would do nothing until they were paid. DPFOF ¶ 63.

Later that day, Attorney Krueger filed a Motion to Withdraw with the probate court, which was also emailed to Ms. Simonson, requesting that the motion be granted if the court heard no objection within five days. *Id.* ¶¶ 64–65; Dkt. No. 27-11. The probate court granted the Motion on August 26, 2015, discharging COJ "from the representation of Trustee Barbara Simonson for the reasons set forth in its Motion to Withdraw" and confirming that COJ "will have no further obligations concerning the case." DPFOF ¶¶ 66–67; Dkt. No. 27-13. Ms. Simonson did not move to vacate the August 26, 2015 Order, nor did she appeal it. DPFOF ¶¶ 67–68. After that, Defendants performed no work on the probate case and Ms. Simonson administered the Trust and Estate on her own. *Id.* ¶¶ 70–72. On August 31, 2015, Ms. Simonson filed a Petition for Extension of Time to close the Estate, which she prepared herself, in which she represented to the court that she would promptly file the necessary paperwork to close the Estate. *Id.* ¶¶ 73–75. The court granted her request, giving her until October 30, 2015, to close the Estate. *Id.* ¶ 76.

5

Ms. Simonson filed a Personal Representative's Statement to Close Estate. *Id.* ¶ 77. In a letter dated September 18, 2015, the probate court identified the additional documents that it needed from Ms. Simonson before the Estate could be closed and gave her notice that a hearing would be set if the court did not receive an update by October 5, 2015. *Id.* ¶ 78; Dkt. No. 26-10. Ms. Simonson admits that she received this letter but took no action to close the Estate between September 18, 2015 and October 5, 2015, believing that the requested documents had been previously filed and "relying on the fact that at an appropriate time, I could show the Probate Court that I had complied." DPFOF ¶¶ 79–80; Simonson Aff. ¶ 30, Dkt. No. 37-1. Ms. Simonson did not petition the probate court for another extension or hire a new attorney to assist her with the closing of the Estate. DPFOF ¶¶ 82–83.

On October 5, 2015, Ms. Vaira filed a motion to hold Ms. Simonson in contempt for failing to close the Estate. *Id.* ¶ 84. The motion was mailed to Ms. Simonson on October 5, 2015, along with a Notice of Hearing set for November 9, 2015. *Id.* ¶ 85. On October 12, 2015, Ms. Vaira's attorneys mailed a file-stamped copy of the Notice of Hearing to Ms. Simonson. *Id.* ¶ 86; Dkt. No. 27-15. Ms. Simonson claims that "I had no independent knowledge that it had been filed with the Probate Court and believed it was merely a proposed hearing. I have no record of receiving the October 12, 2015 copy of such materials prior to November 9, 2015." Simonson Aff. ¶ 31. Ms. Simonson wrote a letter to Ms. Vaira's attorneys, stating, "The Personal Representative is in the process of closing the probate estate." DPFOF ¶ 81; Dkt. No. 26-11 at 4. Moreover, she represented, "I do not anticipate being available for your proposed hearing date of November 9, 2015. As a result, unless this Motion is withdrawn, the Trustee and Personal Representative will need to petition the Court to delay this hearing." DPFOF ¶¶ 87–88; Dkt. No. 26-11 at 1. Although the motion was not withdrawn, Ms. Simonson did not file a petition to move the hearing date.

DPFOF ¶ 89.  Nor did she ask Defendants to appear on her behalf, petition the probate court on her behalf to delay it, or otherwise communicate with them about it.  *Id.* ¶¶ 90–92.

Ms. Simonson did not appear at the November 9, 2015 hearing.  *Id.* ¶ 96.  Ms. Simonson claims she thought that November 9, 2015, was merely a proposed date for the hearing.  *Id.* ¶ 97. However, she never contacted the court to confirm whether a hearing had been set for that or any other date.  *Id.* ¶ 98.  She states in her affidavit that because she continued to believe that Defendants remained her legal counsel, she assumed that Defendants would appear on her behalf or inform her of the fact that the hearing was scheduled for a certain date.  Aff. Of Barbara Simonson, ¶ 35, Dkt. No. 37-1.  After Ms. Simonson's failure to appear for the hearing, the probate court removed her as trustee and personal representative in an Order dated November 24, 2015. DPFOF ¶ 99.  In doing so, the probate court found that Ms. Simonson was given proper notice of the November 9, 2015 hearing and that the "Court's Order of June 5, 2015 included certain deadlines for [Ms. Simonson] to meet [that] were not met."  *Id.* ¶ 100; Dkt. No. 26-15 at 1.  Ms. Simonson appealed the November 24, 2015 Order, arguing that she was not given proper notice of the November 9, 2015 hearing.  DPFOF ¶¶ 101–02.  The Wisconsin Court of Appeals denied Ms. Simonson's appeal on September 28, 2016, affirming the probate court's finding that Ms. Simonson was given proper notice.  *Id.* ¶¶ 103–04.

On remand, the probate court issued an Order on June 21, 2017, approving a new plan of distribution and imposing surcharges on Ms. Simonson as a sanction, which were deducted from the assets distributed to the Barbara Simonson Sub-Trust.  *Id* ¶¶ 105–06.  Ms. Simonson appealed, arguing that the probate court erred in imposing surcharges against her and approving a plan of distribution in violation of the express terms of the Trust.  ¶ 112.  The appeal was denied and the Probate Court's order was affirmed on April 4, 2018.  *Id.* ¶ 113.  Ms. Simonson moved the court

of appeals for reconsideration, which was denied on May 7, 2018. *Id.* ¶ 114. Ms. Simonson filed

a petition for review with the Wisconsin Supreme Court, which was denied on September 7, 2018.

*Id.* ¶ 115. Ms. Simonson filed suit against Defendants in the U.S. District Court for the District of

Connecticut, which was dismissed for lack of personal jurisdiction. *Id.* ¶¶ 116–17. Ms. Simonson

appealed the decision to the U.S. Court of Appeals for the Second Circuit, which affirmed the

dismissal on April 14, 2023. *Id.* ¶ 118. Ms. Simonson filed the present action eleven days later.

*Id.* ¶ 119.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine

if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech

Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome

of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th

Cir. 1993). In deciding a motion for summary judgment, the court must view the evidence and

draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advoc.

Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels,

Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment

must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue

for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The

nonmoving party must do more than simply show that there is some metaphysical doubt as to the

material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a

showing to establish the existence of an element essential to the party's case, and on which that

party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

### I.      Standing

Defendants argue that Ms. Simonson is not a party to the Legal Services Agreement, and thus lacks standing to bring a breach of contract claim, because she retained Defendants as trustee and representative of the Estate, not in her personal capacity.  They argue that, because she took this position in the fee arbitration that COJ commenced with the State Bar of Wisconsin, she is now estopped from taking a contrary position under the estoppel by record doctrine.  *See* DPFOF ¶¶ 132–33.  "The doctrine requires a showing that: (1) a party against whom estoppel is sought presents a later position that is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position."  *State v. Miller*, 2004 WI App 117, ¶ 31, 274 Wis. 2d 471, 492, 683 N.W.2d 485, 496 (internal quotation marks and citation omitted).

The doctrine does not apply here, however, because the State Bar of Wisconsin dismissed Defendants' request for arbitration because Ms. Simonson did not consent to participating in the arbitration process.  Dkt. No. 27-17 at 1.  Accordingly, Ms. Simonson never convinced a court or arbitrator to adopt her position.  *See Miller*, 2004 WI App 117, ¶ 33 (holding that judicial estoppel did not apply because a judge did not adopt a party's allegedly implicit position by granting that party's motion to dismiss without prejudice).  It thus follows that Ms. Simonson is not barred from asserting her claims under the estoppel by record doctrine.  And because the express language of the Legal Services Agreement she signed demonstrate that she retained COJ in her personal capacity, she clearly has the necessary standing to bring this lawsuit.

9

## II.  Breach of Contract

Alternatively, Defendants contend that Ms. Simonson's failure to pay her legal fees in a timely fashion constituted material breach of the Legal Services Agreement and, as a result, Defendants were excused from any future performance under their agreement.  "It is well established that a material breach by one party may excuse subsequent performance by the other." *Mgmt. Computs. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996).  But not any breach will excuse future performance by the other party.  "If the breach is relatively minor and not 'of the essence', the plaintiff is himself still bound by the contract; he can not abandon performance and get damages for a 'total' breach by the defendant." *Id.* (quoting Corbin, Arthur Linton, CORBIN ON CONTRACTS § 700, at 310 (1960)).  For a material breach to occur, "'there must be so serious a breach of the contract by the other party as to destroy the essential objects of the contract.'" *Id.* (quoting *Appleton State Bank v. Lee,* 33 Wis.2d 690, 692, 148 N.W.2d 1 (1967)).  "The issue of whether a party's breach excuses future performance of the contract by the non-breaching party presents a question of fact." *Id.* at 184.  But like any issue of fact, summary judgment is nevertheless appropriate when no reasonable jury could find in favor of the opposing party based on the evidence in the record.  Fed. R. Civ. P. 56(a).

Wisconsin follows the Restatement of Contracts in deciding whether a breach is material such that all future performance by the non-breaching party is excused. *Mgmt. Computs. Servs.*, 206 Wis. 2d at 184.  The Restatement offers a list of circumstances that should be considered in determining whether a breach is material.  They include:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

10

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

Upon consideration of those circumstances in the context of the facts of this case, it clearly follows that Ms. Simonson's breach of her Legal Services Agreement with COJ was material. Under the terms of the Agreement, Ms. Simonson was required to "pay our monthly statements on time." Dkt. No. 27-2 at 2. The Agreement further provided that "[a]ll of our statements are payable within thirty (30) days of receipt. After paying the first six statements in full, Ms. Simonson stopped paying the full amount. As of April, 30, 2015, the total outstanding balance was $91,462. In May and July, she made partial payments of $15,000 and $12,000, leaving a balance of $80,216, but made no further payments over the following four months. COJ made repeated requests that she pay her bill throughout this time and even offered substantial discounts, but Ms. Simonson never accepted the offers and simply refused to pay her bill.

After repeated warnings, COJ finally filed a motion to withdraw from its representation in the matter, citing Ms. Simonson's failure to pay for services as its reason. In support of its motion, COJ cited Wisconsin Supreme Court Rule (SCR) 20:1.16(b)(1), (5), (6) of the Rules of Professional Conduct for Attorneys, which provides, inter alia, that a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

* * * *

11

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client;

Dkt. No. 26-7 at 3. The motion was granted, without objection, on August 26, 2015, in a written order stating: "the Law Firm of Conway, Olejniczak & Jerry, S.C. is discharged from the representation of Trustee Barbara Simonson for the reasons set forth in its Motion to Withdraw" and confirming that "the Law Firm of Conway, Olejniczak & Jerry, S.C. will have no further obligations concerning the case." Dkt. No. 27-13.

By not paying her lawyers, Ms. Simonson deprived them of the benefit, indeed, the only benefit, they reasonably expected. To expect COJ to continue its representation of Ms. Simonson would only add to the fees she was refusing to pay. Given her failure to even discuss COJ's offer of a reduction, it is unlikely COJ would ever see payment of the amount outstanding and any additional fees it earned. Ms. Simonson argues that ultimately payment was guaranteed, since COJ's fees were to be paid out of the trust and its assets were more than sufficient to cover COJ's fees. But payment from the Trust assets required approval of the Trustee, Ms. Simonson, and she had steadfastly refused to authorize payment. The Probate Court's decision granting COJ's motion is strong support for, if not conclusive evidence of, the fact that Ms. Simonson's breach was material. And of course, she could have avoided any forfeiture by retaining yet her fourth lawyer to represent her or just responding to the Probate Court's directions.

Given these circumstances, no reasonable jury could find that Ms. Simonson's breach of the Legal Services Agreement with COJ was not material and thereby excused any further performance by the defendants. Defendants' motion for summary judgment can be granted for this reason alone.

12

### III.  Defendants' Breach

Defendants also argue that, under the terms of the original Legal Services Agreement, they did not have an obligation to file any paperwork to close the Estate, or to appear at the November 9, 2015 hearing, because nowhere in writing did they agree to undertake such obligations.  Indeed, once the firm's motion to withdraw was granted, defendants were relieved of any further obligations in the case.

"Whether a party to a contract has breached a contractual provision is a question of law." *Elliott v. Donahue*, 169 Wis. 2d 310, 316, 485 N.W.2d 403, 405 (1992).  A plaintiff cannot prevail on a breach of contract claim without identifying the terms of a written contract that were breached or showing that an oral agreement was enforceable.  *See Nelson v. Berg*, 2023 WI App 32, ¶ 29, 408 Wis. 2d 542, 993 N.W.2d 175 (unpublished).  While it is undisputed that Defendants were retained to "represent [Ms. Simonson] in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira," Ms. Simonson argues that the scope of the representation expanded when COJ took over responsibility for closing the Estate and assisted with administering the Trust.  DPFOF ¶¶ 13, 20 & 23; Dkt. No. 27-8.  Ms. Simonson contends that Defendants did not clearly repudiate their obligation to close the Estate until August 24, 2015, in an email exchange with Attorney Olejniczak.  Simonson Decl. ¶ 22.

In an email dated July 21, 2015, however, Ms. Simonson stated that her "primary goal in retaining [COJ] was to get the properties distributed."  DPFOF ¶ 41; Dkt. No. 27-6 at 3.  Accordingly, Attorney Olejniczak wrote in reply, "The properties have been transferred and therefore we believe our representation is concluded."  DPFOF ¶ 42, Dkt. No. 27-6 at 2.  By declaring that the representation was concluded, Attorney Olejniczak unambiguously repudiated any further obligations COJ may have held pursuant to the Legal Services Agreement, or any other

oral agreement of an expanded scope representation. Although Ms. Simonson attempts to raise a genuine dispute of material fact, nothing in the record shows that, at the time, Ms. Simonson did not understand this statement to mean that COJ no longer represented her. *See* Fed. R. Civ. P. 56(c)(1)(B). If anything, Ms. Simonson's July 27, 2015 email suggests that she indeed understood that, as she took issue with the fact that Defendants were in communication with Ms. Vaira's attorney. DPFOF ¶ 43. She even admitted at her deposition that "if [she] needed something from [COJ], [she] needed to let [COJ] know." DPFOF ¶ 45; Simonson Dep. 137:1-15. This strongly suggests that she understood the representation to have concluded.

Further, it is also undisputed that the motion to withdraw, which asked the probate court to grant the motion if within five days Ms. Simonson did not object, was emailed to Ms. Simonson the same day it was filed. DPFOF ¶ 65; Dkt. No. 27-11. Ms. Simonson's claim that she did not realize COJ's motion to withdraw had been granted is belied by the record. Once the probate court discharged Defendants, she petitioned for an extension of time to close the Estate and filed a Personal Representative's Statement to Close Estate with the probate court on her own. *Id.* ¶¶ 73– 75, 77 & 90–92. She even stated in her October 9, 2015 letter addressed to Ms. Vaira's attorney that she was in the process of closing the Estate and that she would petition the probate court to adjourn the November 9, 2015 hearing if Ms. Vaira's motion was not withdrawn. *Id.* ¶¶ 81, 87– 88.

In sum, Ms. Simonson knew that Defendants had withdrawn from their representation of her and, regardless of whether she agreed with it, she assumed the responsibility of representing herself. Under these facts, the court concludes that Defendants did not breach any obligation to assist in the closing of the Estate, or to appear at the November 9, 2015 hearing. No alleged

14

modification of the Agreement was made that changed these facts. Summary judgment can also be granted on this basis.

Given these conclusions, it is unnecessary to address all of the additional arguments Defendants offer in support of the motion for summary judgment. It is enough, or should be, to conclude from the undisputed facts that Plaintiff materially breached the Agreement and, in any event, Plaintiff has failed to show evidence from which a jury could conclude that Defendants failed to fulfill their obligations under the Agreement.

### CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 23) is **GRANTED** and the case is **DISMISSED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of August, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

15